[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the Plaintiffs from the decision of the Town of Stafford Zoning Board of Appeals ("ZBA") denying their application for a variance to build a kennel on their property. The Plaintiffs, Nancy and CT Page 9902 Gildore Gagnon, are the owners of property located at 137 Stafford Street in Stafford which they purchased on July 13, 2001. Previous to that date, on July 5, 2001, they applied for a variance because they claimed that they desired to build a twelve by eighteen foot kennel on the property and that they could not do so anywhere on the property if they were required to comply with Section 5.02(a)(2) of the Town of Stafford Zoning Regulations. That regulation requires that "no building for the housing, boarding or treatment of animals [be] within three hundred (300) feet of any property or street line, or within any other building designed for human habitation on an adjoining property." Pursuant to General Statutes § 8-6, the ZBA has the power "to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed."
On August 2, 2001 the ZBA conducted a public hearing on the Plaintiffs' application for a variance. At that time, the Plaintiffs were allowed to amend their application to claim hardship. Mary Tautic, a member of the ZBA and an abutter to the Plaintiffs' property, did not sit as a member of the Board at the hearing but did speak in opposition to the application. She noted that she failed to see the hardship because the Plaintiffs had recently purchased the property and knew the dimensions of the property. Following the public hearing, the ZBA denied the request. The minutes of the meeting indicate that the ZBA denied the Plaintiffs' variance application because of concern with potential noise, and that, if the variance was granted, and the land was sold, up to thirty dogs could be housed on the premises.
On appeal, the Plaintiffs claim that: 1) the decision of the ZBA is null and void because the actions of Tautic violated the provisions of General Statutes § 8-11; 2) the decision is arbitrary, capricious, unreasonable and illegal; and 3) the zoning regulation itself is arbitrary, capricious, unreasonable and illegal.
General Statutes § 8-8 provides that "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located." A "board" within the meaning of this statute includes a municipal zoning board of CT Page 9903 appeals.
The parties stipulated that the Plaintiffs were aggrieved by the ZBA's decision on their application. However, the stipulation of the parties is not sufficient, the court must make a factual and legal determination of aggrievement since its jurisdiction rests upon it. Nader v. Altermatt,166 Conn. 43, 59 (1974).
At the hearing on this matter before the court on April 8, 2002, Gildore Gagnon testified. From the testimony presented, the court finds that Gildore and Nancy Gagnon are the owners of the property located at 137 Stafford Street, Stafford, having purchased the property on July 13, 2001. As the owners of the property, the plaintiffs are aggrieved by the action of the ZBA in denying their application to vary the application of the zoning regulations to their land so that they could build a kennel.Winchester Woods Assocs. v. Planning Zoning Comm'n, 219 Conn. 303, 308
(1991); Bossert Corporation v. Norwalk, 157 Conn. 279, 285 (1968).
As to their claims on the merits, the Plaintiffs first claim that it was improper for Tautic to disqualify herself from acting on the Plaintiffs' application yet speak in opposition to it. The Plaintiffs cite General Statutes § 8-11 which provides: "No member of any zoning commission or board and no member of any zoning board of appeals or of any municipal agency exercising the powers of any zoning commission or board of appeals, whether existing under the general statutes or under any special act, shall appear for or represent any person, firm, corporation or other entity in any matter pending before the planning or zoning commission or board or said board of appeals or any agency exercising the powers of any such commission or board in the same municipality, whether or not he is a member of the board or commission hearing such matter." The Plaintiffs cite the decision in Sunny WoodConvalescent Home, Inc. v. ZBA of the Town of Norwich, Superior Court, judicial district of New London at Norwich, Docket No. 095499 (August 28, 1991) (6 CSCR 848), in support of their position. There the court held that it was improper for a member of the ZBA to disqualify himself from hearing a matter and then speak before the Board in opposition to it. The court stated: "Board members should not be permitted to jump from one side of the table to the other when matters affect their personal interest." Sunny Wood Convalescent Home, Inc. v. ZBA of the Town ofNorwich, supra, Superior Court, Docket No. 095499. This decision is contrary to the previous decision in Massimo v. Planning Commission,41 Conn. Sup. 196 (1989), cited by the Defendant. There the issue was whether an alternate member of a zoning commission was barred by § 8-11
from attending a public hearing and speaking in opposition to an application before a separate planning commission where his own property was across the street from the premises on which the special permit was CT Page 9904 being sought, and, if he was so barred, whether the planning commission's action was voided by his appearance. The court stated: "Section 8-11 aims its prohibition at zoning board members or alternates who act on behalf of, or, as a spokesperson for, third parties. `Appear for or represent any person,' a phrase which connotes agency or acting as a spokesperson for others, is the statutory language used to express the prohibited act. It is that advocacy for others that the statute prohibits. It does not prohibit a member or alternate of a zoning commission from speaking individually before a planning commission about the effect of an application on his own property. This interpretation of the statute is consistent with the state and federal due process requirements that prevent persons from being deprived of their property and the opportunity to be heard about proposals affecting their property without due process of law regardless of whether they serve on a zoning commission. What the plaintiffs' argument comes down to is that § 8-11 should be read to mean that any regular or alternate member of a zoning commission is forbidden to appear or speak on behalf of or against any application
before a planning board. The words of the statute do not refer to a prohibition against appearing for or against an application, however, but merely prohibit `appear[ing] for or represent[ing] any person, firm, corporation . . . in any matter pending. . . .' The focus of the prohibition is representation of others. `No part of a legislative enactment is to be treated as insignificant and unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase. . . .'State v. Grant, 176 Conn. 17, 20, 404 A.2d 873 (1978). Put another way, when the legislature used the phrase `appear for or represent,' its purpose was to prevent the member from acting for or on behalf of others, and not from speaking for himself on an application affecting his own property. If it intended to prevent any zoning board member individually from either making an application or speaking against an application, the legislature could have accomplished that end without using the phrase `appear for or represent any person.'" Massimo v. Planning Commission,41 Conn. Sup. 196, 199-200 (1989). The court here agrees with the reasoning of the court in Massimo. It could not have been the intent of the legislature that the practical result of § 8-11 would be that, by their election to a local zoning board of appeals, members give up their right to advocate on their own behalf regarding issues that may affect their private property rights. In light of the dilemma such an interpretation of § 8-11 would present, the holding in Massimo has been followed in other Superior Court cases. In Peterson v. ReddingPlanning Commission, Superior Court, judicial district of Danbury at Danbury, Docket No. 90-03029 16 (December 2, 1992), the court held that it was not improper for a member of the Planning Commission to disqualify himself and then appear and speak at the public hearing on his own behalf. In Phillips v. Town of Salem Planning Zoning Commission, Superior Court, judicial district of New London at Norwich, Docket No. CT Page 9905 113120 (May 12, 1998), the court also held that General Statutes § 8-11
"does not prohibit a member who is not participating in a matter form presenting their own view on the subject." Similarly, in Leshine v.Planning Zoning Commission, Superior Court, judicial district of New Haven at New Haven, Docket No. 98-0413985 (May 17, 2000) the court, citing R. Puller, 9A Connecticut Practice Series: Land Use Law and Practice (1999) § 47.3 p. 441, stated that General Statutes § 8-11
"does not expressly prevent agency members from representing themselves in applications before the agency. While this might be claimed to be an oversight, another argument is that agency members should not have less property rights than other property owners in the municipality, and should not have to resign from the agency in order to present an application involving their own land."
Here the record indicates that an alternate was seated for Mary Tautic during the hearing and deliberations of the Plaintiffs' application. In the list of names of abutters attached to the Plainitffs' application is noted "Brian R. Mary A. Tautic, 5 Fox Run, Staff., 41/44A-3." The record also indicates that Tautic spoke only on her own behalf as an "abutter." She did not appear before the Board on behalf of anyone other than herself. Therefore Tautic did not violate the provisions of General Statutes § 8-11 and her appearance before the ZBA on the Plaintiffs' application does not affect the validity of the Board's decision.
The Plaintiffs next claim that the decision of the ZBA is arbitrary, capricious, unreasonable and illegal because it was not based on substantial evidence and the Plaintiffs met all the criteria of the zoning regulations. The standard of review of a decision of a zoning board of appeals is well established. "`[C]ourts are not to substitute their judgment for that of the board, and . . . the decisions of local boards will not be disturbed as long as honest judgment has been reasonably and fairly made after a full hearing. . . ." (Internal quotation marks omitted.) Jaser v. Zoning Board of Appeals,43 Conn. App. 545, 547, 684 A.2d 735 (1996). The trial court's function is `to determine on the basis of the record whether substantial evidence has been presented to the board to support [the board's] findings. . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . Where the board states its reasons on the record we look no further.' (Citations omitted; internal quotation marks omitted.) Id., 547-48." Stancuna v. Zoning Board of Appeals, 66 Conn. App. 565, 567-568
(2001). "[A] zoning board of appeals . . . is `endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal.'Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152, 543 A.2d 1339
(1988). `The burden of proof to demonstrate that the board acted CT Page 9906 improperly' is upon the party seeking to overturn the board's decision.Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707, 535 A.2d 799
(1988), quoting Whittaker v. Zoning Board of Appeals, 179 Conn. 650,654, 427 A.2d 1346 (1980)." Pleasant View Farms Dev. v. Zoning Board ofAppeals, 218 Conn. 265, 269-270 (1991).
"`In order to determine whether the board properly granted the subject variance, we must first consider whether the board gave reasons for its action. Scalzo v. Danbury, 224 Conn. 124, 129, 617 A.2d 440 (1992). . . . Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . . The [decision] must be sustained if even one of the stated reasons is sufficient to support it. . . . [This] applies where the agency has rendered a formal, official, collective statement of reasons for its action. . . . Protect Hamden/North Haven from ExcessiveTraffic Pollution, Inc. v. Planning Zoning Commission, 220 Conn. 527,544, 600 A.2d 757 (1991). Where a zoning board of appeals does not formally state the reasons for its decision, however, the trial court must search the record for a basis for the board's decision. ConnecticutResources Recovery Authority v. Planning Zoning Commission,225 Conn. 731, 743, 626 A.2d 705 (1993).' (Citation omitted; internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, supra,233 Conn. 207-208." Stancuna v. Zoning Board of Appeals, 66 Conn. App. 565,570-571 (2001).
Here, the minutes of the Board's meeting states that: "The Board reiterated that the variance stays with the land forever and again expressed their concerns that should the land be sold in the future, up to 30 dogs could be housed on the premises. The Board felt that this many dogs could create an unacceptable level of noise." The statement of the reasons of the Board in its minutes constitutes a "formal, official, collective statement of reasons for its action." Harris v. ZoningCommission, 259 Conn. 402, 421 (2002) (reference to the failure of the Board to articulate its reasons for its decision in the minutes of its meeting used to support court's conclusion that the board did not state its reasons in a formal, official, collective statement). "When a zoning agency has stated its reasons for its actions, a court should not reach beyond those stated purposes to search the record for other reasons supporting the commission's decision. DeMaria v. Planning ZoningCommission, 159 Conn. 534, 541, 271 A.2d 105 (1970). Rather, `the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations.' (Internal quotation marks omitted.) Protect Hamden/NorthCT Page 9907Haven v. Planning Zoning Commission, supra, 220 Conn. 544." Harris v.Zoning Commission, 259 Conn. 402, 420 (2002).
The transcript of the public hearing discloses that in his remarks the Plaintiffs' attorney noted that the Plaintiffs' dogs "are not barkers, they are not yappers." A number of other persons voiced their concern, however, that if the Plaintiffs were allowed to build a kennel to house a number of dogs, there would be some barking and this would affect their quality of life. Although the Plaintiffs stated that they intended to only have ten dogs if allowed to build the kennel, if the variance was granted they could have as many as thirty. The Plaintiffs claim that since the only evidence in the record as to future noise was speculative, the Board's decision was made without substantial evidence. This argument is without merit. Speculating on the effect of the granting of any variance is by necessity the job of the Board since they must consider the implications of the proposed variance on the land before it is effectuated. In any event, there is support in the record for the findings of the Board regarding the level of noise. A number of persons spoke as to their concerns regarding the noise that could be generated by a large number of dogs and the effect of that on their quality of life. For example, Christine Tautic, who is a dog owner and who had experience with kennels, voiced her concern regarding the potential for noise when you have a number of dogs in an area where there are woods and other animals. Thus the grounds stated by the Board are reasonably supported by the record.
Once the court has found that the reasons of the Board are supported by the record, the court must then consider whether the board's reasons are pertinent to the considerations which the commission is required to apply under the zoning regulations. Pursuant to Section 6.62(d) of the Zoning Regulations of the Town of Stafford, "No variance in the strict application of any of the requirements of the Zoning Regulations shall be granted unless the Zoning Board of Appeals shall find: . . . That the granting of the variance is in harmony with the general purposes and intent of the Zoning Regulations and will not be detrimental to public health, safety, convenience, welfare and property values." The general purpose of the Stafford zoning regulations, as stated in its statement of purpose, is to "promote the health, safety and general welfare of the residents of the Town of Stafford." The Plaintiffs' application requested that they be allowed to build a kennel in an area with less of a buffer distance from other properties than required by the regulations. The Board found that such a variance could cause an unacceptable level of noise. Such a reason is within the considerations of what is in the interest of the public health, convenience and general welfare of the citizens of Stafford, which is pertinent to the Board's consideration of this matter under the zoning regulations of the Town. CT Page 9908
In opposition to the Plaintiffs' argument, the Town claims that the Plaintiffs failed to show hardship as required by the statute. General Statutes § 8-6 (a)(3) "`provides that the board may grant variances with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured. . . . To support a variance, therefore, a hardship must arise from a condition different in kind from that generally affecting properties in the same zoning district and must be imposed by conditions outside the property owner's control. . . . The applicant bears the burden of demonstrating the existence of a hardship.' (Internal quotation marks omitted.) Norwood v. Zoning Board of Appeals, supra,62 Conn. App. 532-33." Stancuna v. Zoning Board of Appeals,66 Conn. App. 565, 568 (2001). Here the Board did not specifically find that there would be no hardship if the variance was not granted. But the burden was on the Plaintiffs to establish hardship and the failure of the Board to find any hardship indicates that the Plaintiffs did not meet that burden. In any event, "the `hardship must arise from. . . circumstances or conditions beyond the applicant's control.' (Internal quotation marks omitted.) Id. The zoning authority lacks the authority to grant a variance where the claimed hardship is due to some voluntary act of the owner of the property and, therefore, a self-created or voluntarily assumed hardship cannot serve as a valid basis for a variance. Spencer v. Zoning Board of Appeals, 15 Conn. App. 387, 389-90,544 A.2d 676 (1988). One specific type of voluntarily assumed hardship is embodied in what has been termed `the purchase with knowledge rule.' R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 9.4, p. 190. Under that rule, if a purchaser acquires property with knowledge of the applicable zoning regulations and later attempts to use that property in a manner that is proscribed by the regulations, the purchaser is barred from obtaining a variance. See, e.g., Abel v. Zoning Board of Appeals, 172 Conn. 286, 289-91, 374 A.2d 227
(1977)." (Footnote omitted). Kalimian v. Zoning Board of Appeals,65 Conn. App. 628, 632 (2001). Here the record reveals that the Plaintiffs applied for the variance even before they purchased the land. Therefore they voluntarily purchased the land knowing full well that they could not build the proposed kennel without a variance. This was a self-created situation and therefore insufficient to establish hardship. Therefore the Board's decision denying the Plaintiffs' application for the variance was not arbitrary, capricious, unreasonable or illegal.
Lastly, the Plaintiffs claim that the zoning regulation itself is arbitrary, capricious, unreasonable and illegal. The Plaintiffs claim CT Page 9909 that the regulation, by requiring that a kennel be located three hundred feet from any property line and that the land must be at least five acres creates a mathematical impossibility since one would need at least almost six and one-half acres to meet the three hundred feet barrier. The Defendant does not address this claim. Nevertheless, the Plaintiffs' claim relates to the application of the regulations to a hypothetical set of facts unrelated to this case. Their property consists of over twelve acres of land. Thus the fact that the regulation may not make sense when applied to a smaller lot is of no import. In order to sustain their argument the Plaintiffs must demonstrate the invalidity of the regulation as applied to the facts of this case. See, Bombero v. Planning ZoningCommission, 218 Conn. 737, 743 (1991). Therefore the Plaintiffs' final argument is without merit.
Conclusion
The Plaintiffs' appeal is dismissed.
Scholl, J.